383 S.E.2d 857

**KANAWHA VALLEY REGIONAL TRANSPORTATION AUTHORITY**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Betty Hatcher.**

**No. 18955.**

Supreme Court of Appeals of West Virginia.

Aug. 2, 1989.

Cheryl Harris Wolfe, Robert A. Lockhart, Jackson & Kelly, Charleston, for Kan. Valley Regional.

Phyllis Carter, Dir., HRC, Kelli D. Talbott, Asst. Atty. Gen., Charleston, for HRC and Betty Hatcher.

PER CURIAM:

In this appeal, the employer, the Kanawha Valley Regional Transportation Authority (KVRTA), appeals from a final order entered on December 12, 1988, by the West Virginia Human Rights Commission (Commission). The Commission found that KVRTA had discriminated against the complainant, Betty Hatcher, on the basis of her age, ordered that she be reinstated to her former position with back pay, and awarded compensatory damages for mental and emotional distress. KVRTA contends that the Commission erred in concluding that by subjecting Ms. Hatcher to stricter scrutiny, it discriminated against her on the basis of her age. We agree, and we reverse the Commission.

Ms. Hatcher was hired by KVRTA on August 16, 1982, to work as a telephone information operator. Her central duty was to handle incoming calls about bus schedules and rates. In November, 1983, Ms. Hatcher assumed the more responsible position of general office receptionist. Prior to her employment at KVRTA, Ms. Hatcher had held several other office jobs and had graduated from Garnet Career Center where she received a certification in word processing and accounting.

Ms. Hatcher performed her job duties until March 15, 1986, when KVRTA eliminated the general office receptionist position for economic reasons. When she was laid off, Ms. Hatcher was fifty-three years old. Ms. Hatcher filed a complaint with the Commission, which found probable cause that she had been discriminated against because of her age.

During an administrative hearing held on October 27 and 28, 1986, Ms. Hatcher presented evidence that when she was laid off, a younger employee assumed substantially all of her former job duties. In support of her contention that she was treated differently than other employees, Ms. Hatcher introduced the contents of a separate "personnel" file maintained by her supervisor, Kathy H. Clark. The file chronicled purported errors and omissions made by Ms. Hatcher while performing her job duties. The entries began in September, 1984, and continued through May, 1985. Ms. Clark did not keep a file on any other employee she supervised. Ms. Hatcher also received written memoranda for tardiness and for performing personal business during office hours.

KVRTA presented evidence that other employees age forty years or older were retained in their positions when the 1986 reduction-in-force occurred. Ms. Clark testified that Ms. Hatcher was the only employee whose conduct necessitated maintaining a separate file.

The hearing examiner recommended a finding of discrimination because KVRTA's articulated reason for laying off Ms. Hatcher, her job deficiencies, was pretextual. The Commission adopted the hearing exam-

iner's recommendation and KVRTA appealed.[1]

Under W.Va.Code, 5–11–3 (1987), "discrimination" means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness or handicap, and includes to separate or segregate[.]" It is unlawful "for any employer to discriminate against an individual with respect to ... tenure of ... employment if the individual is able and competent to perform the services required[.]" W.Va.Code, 5–11–9(a) (1977).[2]

While we addressed discriminatory discharge on the basis of age in *Mingo County Equal Opportunity Council v. Human Rights Comm'n*, 180 W.Va. 240, 376 S.E.2d 134 (1988), and in *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986), this appeal presents for the first time an allegation of disparate-treatment age discrimination when there has been a reduction in force for economic reasons.

■ In a disparate-treatment discrimination case, the burden of proof is allocated between the parties according to the framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973). After the complainant makes a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the negative action taken against the complainant. The complainant then must prove that the employer's reason was pretextual.[3]

■ The complainant makes a *prima facie* case by "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 966 (1978), *quoting Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396, 429 (1977). In more specific detail involving a reduction-in-force complaint, the court in *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 644 (5th Cir.1985), explained:

"In a reduction-in-force case, what creates the presumption of discrimination is not the discharge itself, but rather the discharge coupled with the retention of younger employees. Unlike in an ordinary discharge case, where the mere discharge creates a presumption of discrimi-

---

1. This appeal is brought under the 1987 amendments to W.Va.Code, 5–11–11, which provided for a direct appeal to the West Virginia Supreme Court. This section now reads in pertinent part: "(a) From any final order of the commission, an application for review may be prosecuted by either party to the supreme court of appeals within thirty days from the receipt thereof by the filing of a petition therefor to such court against the commission and the adverse party as respondents[.]"

    The standard of review remains, as we held in Syllabus Point 1 of *Frank's Shoe Store v. West Virginia Human Rights Comm'n*, 179 W.Va. 53, 365 S.E.2d 251 (1986):
    " 'West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties.' Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local No. 655*, 167 W.Va. 282, 280 S.E.2d 653 (1981)."

2. Our statute tracks the wording of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U.S.C. § 2000e, but includes protection on the

basis of age. Congress enacted the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621–634, to meet this goal.

3. *McDonnell Douglas*, a case of discriminatory hiring on the basis of race, established four elements: (1) that the complainant belonged to a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after the rejection, the position remained opened and the employer continued to seek applications from persons with complainant's qualifications.

    To meet the ultimate burden that age was a motivating factor in cases brought under ADEA, every federal circuit has applied the *McDonnell Douglas* Title VII indirect, burden-shifting method of proof. We adopted the *McDonnell Douglas* framework to prove discrimination under W.Va.Code, 5–11–1, *et seq.*, in *State ex rel. State of West Virginia Human Rights Comm'n v. Logan–Mingo Area Mental Health Agency*, 174 W.Va. 711, 329 S.E.2d 77 (1985), and in *Shepherdstown V.F.D. v. West Virginia Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

nation because we assume that an employer does not fire a qualified employee, in a reduction-in-force case, discharges are readily explicable in terms of the employer's economic problems. Consequently, the fact that qualified, older employees are laid off is not inherently suspicious and does not in itself warrant shifting the burden of production to the employer to justify his actions. . . .

"Instead, what is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee but retained younger ones."

Other circuit courts of appeals have utilized this general basic formula in reduction-in-force age discrimination cases, which consists of these basic elements: (1) that the claimant was a member of the protected class (at least forty years of age); [4] (2) that a negative action was taken (that she was fired); (3) she was qualified; [5] and (4) that others not in the protected class were treated more favorably.[6]

■ This Court created a general test of a *prima facie* case of disparate-treatment employment discrimination in Syllabus Point 3 of *Conaway v. Eastern Associated Coal Corp., supra:*

"In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va. Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following:

"(1) That the plaintiff is a member of a protected class.

"(2) That the employer made an adverse decision concerning the plaintiff.

"(3) But for the plaintiff's protected status, the adverse decision would not have been made."

However, it is clear that our formulation in *Conaway* was not intended to create a more narrow standard of analysis in discrimination cases than is undertaken in the federal courts. This is manifested by our reliance on applicable federal cases as illustrated by *West Virginia Institute of Technology v. West Virginia Human Rights Comm'n*, 181 W.Va. 525, 530, 383 S.E.2d 490, 495 (1989), where we cited a number of federal cases and described the type of evidence required to make a *Conaway prima facie* case:

"[B]ecause discrimination is essentially an element of the mind, there will normally be very little, if any, direct evidence available. Direct evidence is not, however, necessary. What is required of the complainant is to show some circumstantial evidence which would sufficiently link the employer's decision and the complainant's status as a member of a

---

**4.** Age discrimination statutes uniformly begin protection at age forty, but offer different upper limits. By the ADEA amendments of 1978, the top age was set at seventy years except for federal employees for whom there is no limit. Some state statutes set the age at sixty-five. W.Va.Code, 5–11–3(q) (1987), defines "age" as "the age of forty or above."

**5.** The "qualified" element has been described as follows: that the complainant was qualified for the position held, *Mauter v. Hardy Corp.*, 825 F.2d 1554 (11th Cir.1987); *Montana v. First Federal S & L of Rochester*, 869 F.2d 100 (2d Cir. 1989); *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 789 F.2d 253 (3d Cir.1986); *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339 (D.C.Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); that the complainant was qualified to assume another position at the time of the reduction-in-force, *Coston v. Plitt Theaters, Inc.*, 831 F.2d 1321 (7th Cir. 1987); *Thornbrough v. Columbus & Greenville R.R. Co., supra;* that the complainant was performing the job duties according to the employ-

er's legitimate expectations, *Herold v. Hajoca Corp.*, 864 F.2d 317 (4th Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); *Oxman v. WLS–TV*, 846 F.2d 448 (7th Cir.1988); and, that the complainant was performing the job in a satisfactory manner, *Palmer v. United States*, 794 F.2d 534 (9th Cir.1986).

**6.** In this regard, courts have considered cases where persons outside the protected age class were retained in the same position or that there was some other evidence that the employer did not treat age neutrally in deciding to dismiss the plaintiff, *Herold v. Hajoca Corp., supra;* where the position was filled by a person sufficiently younger to permit an inference of age discrimination, *Healy v. New York Life Ins. Co.*, 860 F.2d 1209 (3d Cir.1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989); and where evidence existed, circumstantial or direct, from which a factfinder reasonably could conclude that the employer intended to discriminate in reaching the decision, *Mauter v. Hardy Corp., supra.*

protected class so as to give rise to an inference that the employment related decision was based upon an unlawful discriminatory criterion."

█ It is undisputed that Ms. Hatcher is a member of a protected class, i.e., over the age of forty, and that the employer made an adverse decision concerning her employment. The Commission found that Ms. Hatcher established a *prima facie* case based upon evidence that she was subjected to treatment dissimilar from that accorded other office employees. Her supervisor kept a file on her mistakes and deficiencies while no such files were kept on her fellow employees. She alone received written reprimands for tardiness. A younger person was retained as an employee when the reduction-in-force occurred and subsequently assumed parts of Ms. Hatcher's job duties. We agree that the inferences drawn from this circumstantial evidence might have created a rebuttable presumption of age discrimination. However, we need not decide this point because we believe the employer has rebutted any *prima facie* case, if it existed, under Syllabus Point 2 in *West Virginia Institute of Technology v. West Virginia Human Rights Comm'n, supra:*

> "The complainant's prima facie case of disparate-treatment employment discrimination can be rebutted by the employer's presentation of evidence showing a legitimate and nondiscriminatory reason for the employment-related decision in question which is sufficient to overcome the inference of discriminatory intent."

The employer's rebuttal was that Ms. Hatcher alone was criticized because her coworkers' performed at a higher level and, therefore, they did not merit reprimands. As we pointed out in note 5, *supra*, the employee must demonstrate that she is "qualified" for the job. The West Virginia Human Rights Act does not guarantee a job regardless of qualifications.[7]

KVRTA produced memoranda given to Ms. Hatcher about her work performance.

It appears that in December, 1984, KVRTA instituted stricter work rules which applied to all employees. In a November 8, 1985, memorandum, written because several employees had become lax in adhering to work hours, the employer set sanctions for "anyone not reporting to work on time, leaving early or extending their lunch period without specific permission." Ms. Hatcher's pay was adjusted down for reporting to work late in accordance with this memorandum.

Additionally, in May, 1985, Ms. Hatcher's supervisor identified in writing ten serious deficiencies in her work product, told her that the errors were not acceptable, and stated that, if her work performance did not improve immediately, termination from employment would result. Ms. Hatcher's performance had not improved by 1986 when economic conditions necessitated the reduction-in-force. Based on this record, we believe that the employer's legitimate nondiscriminatory reason was not rebutted by Ms. Hatcher, and we, therefore, reverse the findings of the Commission.

Reversed.

---

7. W.Va.Code 5–11–9 (1987), makes it unlawful to discriminate against an individual with respect to employment "if the individual is able and competent to perform the services required...."