35 F.3d 558
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John D. VOGEL, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY, a foreign corporation licensed
to do business in the State of West Virginia,
Defendant-Appellee.
 No. 93-2560.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 6, 1994.
Decided: Sept. 2, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Dennis Raymond Knapp, Senior District Judge. (CA-92-213-2)
 ARGUED: Robert A. Taylor, Masters & Taylor, L.C., Charleston, W VA, for appellant.
 Tegan M. Flynn, Vinson & Elkins, L.L.P., Washington, DC, for appellee.
 ON BRIEF: Kathleen T. Pettigrew, Masters & Taylor, L.C., Charleston, W VA, for appellant.
 Daniel L. Stickler, Sr., Gene W. Bailey,II, Jackson and Kelly, Charleston, W VA; Douglas E. Hamel, Vinson & Elkins, L.L.P., Houston, TX, for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 John D. Vogel ("Vogel"), a West Virginia resident, appeals the district court's order granting summary judgment in favor of Travelers Insurance Company ("Travelers"), a Connecticut corporation, in this age discrimination case filed under West Virginia's Human Rights Act, Sec. 55-11-1 et seq.[1] Finding no error with the judgment below, we affirm.
 
 I.
 
 2
 Vogel was a 43 year old Financial Services Manager working in the Charleston, West Virginia office of Travelers when he was fired on or about June 1, 1990. At the time of his termination, Vogel had been employed with Travelers for over eleven years, having served the past three in the Financial Services Division ("FSD") of the Charleston, West Virginia office.
 
 
 3
 In early 1990, Travelers responded to a downturn in business by instituting structural changes in the company resulting in a work force reduction in various departments of the company. The FSD of the Charleston, West Virginia office was one such department that was closed and all employees in Vogel's department were terminated with the exception of one, Cheryl Boyd, who remained on the job only a few months to handle administrative functions. By virtue of the nationwide changes, nearly 288 financial positions, including Vogel's, were eliminated.
 
 
 4
 The manner in which the positions were eliminated is the focus of this lawsuit. The process was devised during a three day Travelers conference held in Innisbrook, Florida in March 1990. Among those in attendance were 25 FSD regional directors from around the country, home office FSD representatives, human resources personnel, and an Equal Employment Opportunity employee ("EEO employee") of Travelers. Those in attendance were organized into five geographic group panels, with each group panel containing individuals with personal knowledge about the given area and the employees located therein. The group panel members rated the employees located within the newly formed divisions so as to determine whether the employees would remain with the company.
 
 
 5
 Vogel was placed in the Group IV geographic region and was rated along with other employees based on a standard set of skills ("key competencies"). The group panel numerically rated the employees and established a cut-off line, whereby those individuals who fell above the line kept their jobs while those who fell below the line were "staff adjusted" (i.e. terminated). Before any final decisions were made, the list was checked by the Travelers EEO employee, who used a computer program to monitor the staff adjustments so as to ensure that no protected group was adversely affected.
 
 
 6
 Vogel fell below the Group IV cut-off line and therefore was staff adjusted. Vogel claimed the selection process was flawed and that the company's own termination policy procedures were ignored. He maintains that the panel members who rated him barely knew him, and that the various group panelists drew their personal favorites, thus requiring the demotion of otherwise qualified employees into the staff adjusted category. In support of his argument, Vogel pointed to the deposition testimony of Donald Dittemore, a regional director of Group IV, who admitted that the scoring in a given regional group was not perfect and that some regional panel members were tougher scorers than other regional members.
 
 
 7
 Vogel not only attacked the process by which he was terminated, but also challenged an alleged negative attitude of Travelers with respect to its older employees. In an effort to illustrate this negative attitude, Vogel referred to two memos written in 1989 ("1989 memos") by himself and a management supervisor (Hendrickx) while the two were working in Traveler's New Jersey office. The memos recounted a recent meeting the two had with their manager, Larry Moore. At the meeting Moore, who was not involved in the subsequent March 1990 Innisbrook selection process, stated that if desired quotas were not met, he would "fill our slots with new blood, even though it might be young and inexperienced." See Hendrickx Memo, J.A. at 259-60. Moore also stated that "he would not hesitate to fire us because 'I can hire someone younger for less money, protect my credibility with the Region and buy myself two or three years while the new people become productive.' " Vogel Memo, J.A. at 261. Vogel also submitted the deposition testimony of Cheryl Boyd, an administrative employee at the Charleston office, who recalled a regional manager (Royce Imhoff) telling her that it was easier to fire strangers and that Travelers wanted a new look, "kind of like 'out with the old and in with the new.' " Boyd Deposition, J.A. at 76-77. Boyd also stated that Harold Darak, a FSD director, stated "[t]hat the younger people have more energy ..." Id. at 82.
 
 
 8
 In addition to providing this testimony, Vogel presented statistical analysis from his own expert purportedly showing that the reorganization process negatively impacted those over the age of 40. Dr. Brady Report, J.A. 241. Vogel relied heavily on these statistics during the summary judgment motion which was decided against him.
 
 II.
 
 9
 We review the district court's grant of summary judgment de novo and construe the facts before us in the light most favorable to Vogel. EEOC v. Clay Printing Co., 955 F.2d 936 (4th Cir.1992); Higgins v. E.I. Dupont De Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988). The lower court's decision will be affirmed if there are no genuine issues of material fact and Travelers is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Because this case is a diversity action involving the application of a state statute, West Virginia law will guide our inquiry. Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530 (4th Cir.1991).
 
 III.
 
 10
 In order to establish a cause of action for disparate treatment age discrimination under the West Virginia Human Rights Act, the plaintiff must first present a prima facie case showing:
 
 
 11
 1) that he is a member of a protected class;
 
 
 12
 2) that his employer made an adverse decision concerning the plaintiff; and that
 
 
 13
 3) But for the plaintiff's protected status, the adverse decision would not have been made.
 
 
 14
 Conaway v. Eastern Associated Coal Corporation, 178 W.Va. 164, ----, 358 S.E.2d 423, 429 (1987); see also Kanawha Valley Regional Transp. Auth. v. West Virginia Human Rights Comm'n, 181 W.Va. 675, 383 S.E.2d 857 (1989).
 
 
 15
 Once the plaintiff has established a prima facie showing of age discrimination, the burden of production falls on the employer, who must show a legitimate, non-discriminatory reason for the employment decision which is sufficient to overcome the inference of discriminatory intent. The burden of persuasion then shifts back to the employee, who must show by a preponderance of the evidence that the employer's stated reason is really a pretext for a discriminatory motive. Conaway, 178 W.Va. at ----, 358 S.E.2d at 430.
 
 
 16
 In the case at bar, the district court concluded that Vogel failed to establish the "but-for" element of the Conaway test and therefore did not present a prima facie case of age discrimination. The district court further found that even if Vogel had made such a showing, Vogel failed to rebut Traveler's legitimate and non-discriminatory reason for discharging Vogel. For these reasons, the court granted Travelers' motion for summary judgment.
 
 
 17
 Vogel challenges the district court's decision primarily on two grounds. First, Vogel maintains that he met the "but-for" element by introducing the following evidence: 1) the deposition testimony of Donald Dittemore in which he admitted that the Innisbrook staff adjustment process was not perfect; 2) the 1989 memos by Vogel and Hendrickx referencing manager Larry Moore's comments following a meeting he had with the two (threatening to replace older employees with "new blood"); 3) the deposition testimony of Cheryl Boyd in which she recounted statements made by two management employees (Imhoff claiming it was easier to fire strangers and Darak stating younger people had more energy); and 4) his expert's statistical evidence which purportedly showed that the termination policy adversely affected older employees. Second, Vogel asserts that once he made his prima facie showing, he was not required under West Virginia law to rebut Travelers' legitimate, non-discriminatory reasons for terminating him. We disagree with both of Vogel's assertions.
 
 
 18
 The district court properly concluded that Vogel failed to show that "but for" Vogel's age, he would not have been fired. Vogel's reliance on the Dittemore deposition testimony, the 1989 memos and the deposition testimony of Cheryl Boyd is misplaced. Dittemore's testimony at best illustrates that the selection process had its flaws; it does not, however, establish that the process was designed to adversely affect older employees. The 1989 memos are likewise not probative since they involve statements made by a New Jersey manager who played no part in the Innisbrook staff adjustment process. As for Cheryl Boyd's deposition testimony, this evidence merely refers to isolated comments of questionable probative value which do not rise to the level necessary to establish a prima facie case of age discrimination. See EEOC v. Clay Printing Co., 955 F.2d 936 (4th Cir.1992) (references to "dead wood" and the need to "attract newer, younger people" are not necessarily probative of age discrimination and do not establish a prima facie case of age discrimination).
 
 
 19
 The sole remaining evidence which Vogel heavily relies upon is the statistical data offered by his expert. Even when construing this evidence in a light most favorable to Vogel, we conclude that this statistical data is insufficient under West Virginia law to meet the "but-for" element of the Conaway test. While statistical evidence may be helpful in proving this element when it is joined with other probative evidence of age discrimination, we are unpersuaded by Vogel's argument that this evidence alone meets his prima facie burden. See Raber v. Eastern Coal Corp., 188 W.Va. 288, 423 S.E.2d 897 (1992) (statistical evidence combined with other forms of evidence helped plaintiff meet burden).
 
 
 20
 Having concluded that the district court properly found that Vogel failed to establish a prima facie case of age discrimination, we offer only passing reference to Vogel's second assignment of error. Even if Vogel had made a prima facie showing, his failure to rebut Traveler's legitimate reasons for terminating him (by showing that they were pretextual) warranted the granting of summary judgment against him.[2] While Vogel contends that such a burden does not shift back to the plaintiff under West Virginia law, we conclude otherwise. See Kanawha Valley, 181 W.Va. at 675, 383 S.E.2d at 857 (although plaintiff established a prima facie case of age discrimination, she failed to rebut the employer's legitimate non-discriminatory reasons for her discharge). Therefore, Vogel's failure to offer proof on this issue is likewise fatal to his claim.[3]
 
 IV.
 
 21
 For the foregoing reasons, the decision of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 Traveler's removed the case to federal court based on diversity of citizenship, see 28 U.S.C. Sec. 1332
 
 
 [2]
 Travelers' need to eliminate Vogel's job so as to cut costs satisfies its relatively simple burden in establishing a legitimate, non-discriminatory reason for the discharge. See Guyan Valley Hospital, Inc. v. West Virginia Human Rights Commission, 181 W.Va. 251, 382 S.E.2d 88 (1989) (reason offered by employer need not be a particularly good one, as long as it is not discriminatory)
 
 
 [3]
 Vogel argues that even if he does not establish a prima facie case of disparate treatment age discrimination, his evidence is sufficient to establish a case of disparate impact age discrimination. Under this latter theory, Vogel must not only identify a particular hiring practice that has caused statistical underrepresentation of a protected group, he must also demonstrate that the challenged practice is not fairly linked to job performance. Guyan Valley, 181 W.Va. at 251, 382 S.E.2d at 88
 Even assuming that the Innisbrook selection process constitutes a "hiring practice," and that Vogel's statistics establish that older employees were underrepresented by virtue of the process, Vogel has failed to come forward with evidence that the criteria used in the selection process (i.e. key competencies checklist) was not fairly linked to job performance. Accordingly, Vogel's disparate impact theory likewise fails.