Argued and submitted March 1, reversed and remanded in part; otherwise affirmed
June 21, 1995

Glenn BUTLER
and Farley Flynn,
*Appellants,*

*v.*

Timothy J. VANAGAS;
Jennings & Vanagas,
*Respondents.*

(9306-04303; CA A81772)

897 P2d 1176

Maureen Leonard and Stephen E. Lawrence argued the cause and filed the briefs for appellants.

Thomas W. Brown argued the cause for respondents. With him on the brief were Kathleen J. Tesner, David H. Williams and Cosgrave, Vergeer & Kester.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

**WARREN, P. J.**

Plaintiffs appeal a summary judgment for defendant in this legal malpractice case.[1] We reverse.

Most of the facts are undisputed. Plaintiffs were field service representatives employed by Portland General Electric (PGE). In 1986, PGE reorganized the customer field service department. In that reorganization, PGE eliminated numerous job titles, including the titles of the jobs held by plaintiffs. It created a new marketing department. The company notified plaintiffs that they were being terminated. Both plaintiffs applied for sales positions in the new department. Plaintiffs were among the 68 applicants who were interviewed for the jobs. Of the 68 applicants who were interviewed, 18 were rejected after the interview, including plaintiffs. Neither plaintiff was offered a position in the new department, and both plaintiffs were terminated by PGE. At the time they were terminated, plaintiff Butler was 44 years old, and plaintiff Flynn was 52 years old.

Plaintiffs filed charges of age discrimination with the Equal Employment Opportunity Commission (EEOC). When the EEOC issued right to sue letters to plaintiffs, plaintiffs retained defendant, an attorney,[2] to represent them in bringing a claim against PGE in federal district court for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 USC § 621 *et seq.* Plaintiffs asserted two theories of age discrimination. First, they alleged that PGE's hiring process, specifically the subjective interview process, had a discriminatory impact on persons over 40 years of age (disparate impact). Second, they alleged that PGE intended to discriminate against them by terminating their employment (disparate treatment). After extensive discovery, PGE filed a motion for summary judgment. Defendant filed a response on plaintiffs' behalf, including affidavits and other evidence,

---

[1] Plaintiffs' complaint asserts two claims: breach of contract and negligence. Defendant moved for summary judgment against both claims. The motion was granted in its entirety. On appeal, plaintiffs do not argue that the trial court erred in granting summary judgment on the breach of contract claim. Therefore, we address only the trial court's ruling on the legal malpractice claim.

[2] Defendant Vanagas and his law firm are both named as defendants. Throughout this opinion, we refer solely to Vanagas.

attempting to show that there were issues of fact that pre-cluded summary judgment.

The federal district court granted PGE's motion. *Butler v. Portland General Elec. Co.*, 748 F Supp 783 (D Or 1990). It concluded that plaintiffs' evidence did not support their disparate impact theory, because the statistical evidence they presented to show that the interview process screened out a disproportionate number of people over 40 years of age measured the wrong pool of applicants. It also rejected plaintiffs' evidence of their disparate treatment theory, concluding that the evidence did not raise an issue of fact about whether the circumstances of their discharge gave rise to an inference of age discrimination. On appeal, the Ninth Circuit affirmed in an unpublished memorandum opinion. *Flynn v. Portland General Electric Co.*, 958 F2d 377 (1992). As a result of the ruling on the motion for summary judgment, plaintiffs lost their action for age discrimination in federal court.

Plaintiffs then filed this action against defendant, claiming that he was negligent in various particulars in regard to his representation of them in the federal ADEA case. Defendant moved for summary judgment, asserting that the statistics and other evidence that plaintiffs allege defendant should have presented to the federal court would not have made a difference in the summary judgment ruling in the federal action. The trial court granted the motion.

Plaintiffs appeal, assigning error to the granting of defendant's motion for summary judgment. They assert first that the court erred in holding that the statistical evidence they assert defendant should have presented to the federal court on their behalf was irrelevant to their disparate impact theory of their age discrimination claim. Second, they argue that the trial court erred in concluding that the additional evidence that they assert defendant should have presented on their disparate treatment theory would not have precluded summary judgment in federal court. Defendant responds that the trial court was correct to grant him summary judgment on the malpractice claim, because the statistical evidence plaintiffs offer is irrelevant as a matter of law to the disparate impact theory, and the additional evidence of disparate treat-ment would not have changed the federal court's summary judgment ruling.

■      To prevail on a claim of legal malpractice, a plaintiff must show that the defendant's representation fell below the standard of care and that, had the defendant met the standard of care, the result would have been different, *i.e.*, the plaintiff would have prevailed on the underlying claim. *Harding v. Bell*, 265 Or 202, 508 P2d 216 (1973). For purposes of this summary judgment motion, there is no dispute about the standard of care or its violation; the narrow issue is causation: whether, had the evidence been presented to the federal court that plaintiffs assert should have been presented, the federal court would have denied PGE's motion for summary judgment and allowed the age discrimination case to go to trial.[3] Defendant is entitled to summary judgment if there are no genuine issues of material fact and if he is entitled to judgment as a matter of law. ORCP 47 C. We view the evidence in the light most favorable to plaintiffs, the nonmoving parties.

Because the dispositive issue in this case is whether the federal court would have denied summary judgment if it had been presented with different evidence, we need to consider the federal standards for summary judgment in order to tell whether the different evidence would have made a difference. Under the federal summary judgment rule, FRCP 56(c), the moving party has the burden to show the absence of a

---

[3] The trial court explained the procedural posture:

"And it seems now it's the point where I have to make the decision that we discussed about whether the new information that has been added, both statistical and testimonial, or, or fact, I guess, let's say, statistical evidence plus added fact evidence is such that defendant presented to the Federal District Court would have caused a different result on the motion for summary judgment.

"And I've indicated if I decide that, that it would not have caused a different result, that concludes the case. If it, if I decide it would have caused a different result, then there is another factual question or there is a factual question that has to be decided by the jury, and that is, was it negligence not to present that additional information, did that fall below the standard of care? And if the jury decides it did fall below the standard of care not to present that, then we go ahead and try the federal discrimination case in this courtroom."

Defendant's argument on his summary judgment motion was that plaintiffs could not show that, had defendant presented the evidence plaintiffs assert he should have presented, the federal court would have ruled differently on PGE's motion for summary judgment. Therefore, the trial court did not consider the other malpractice issues, including whether plaintiffs would have finally prevailed in the federal court action. Defendant acknowledged at oral argument that we should reverse the summary judgment in this case if we conclude that the federal court would have denied PGE's motion for summary judgment if it had it been presented with the evidence that plaintiffs claim defendant should have presented.

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 106 S Ct 2548, 91 L Ed 2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 247, 106 S Ct 2505, 91 L Ed 2d 202 (1986). (Emphasis in original.) A material fact is one that might affect the outcome of the case under the governing law. *Id.* at 248. A genuine issue of fact is one that can reasonably be resolved in favor of either party. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249 (citations omitted); *Eisenberg v. Insurance Co. of North America*, 815 F2d 1285 (9th Cir 1987).

Plaintiffs' claim in federal court was based on 29 USC § 623(a)(1), which makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." The prohibition applies to individuals who are at least 40 years old but less than 70 years old. 29 USC § 631(a). Plaintiffs attempted to prove their federal age discrimination claim under two theories: disparate impact and disparate treatment. We will address each theory in turn.

■ To establish age discrimination on the basis of disparate impact, the plaintiff must establish a prima facie case by (1) identifying the specific employment practices or criteria being challenged; (2) showing that the challenged practice or procedure has a disparate impact on the protected group; and (3) showing that the questioned practice or criteria caused the exclusion of applicants for jobs or promotions because of their age. *Watson v. Fort Worth Bank & Trust*, 487 US 977, 108 S Ct 2777, 101 L Ed 2d 827 (1988); *Rose v. Wells Fargo & Co.*, 902 F2d 1417, 1424 (9th Cir 1990).[4] Under that theory, the plaintiff need not show discriminatory motive or intent, but must show that a facially neutral employment practice has discriminatory effect.

---

[4] Proof requirements for ADEA claims based on disparate impact and disparate treatment are the same as for employment discrimination claims under Title VII, 42 USC §§ 2000e *et seq. Rose v. Wells Fargo & Co.*, 902 F2d 1417, 1420 (9th Cir 1990).

■      Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that its practices serve legitimate employment goals of the employer. *Wards Cove Packing Co. v. Atonio*, 490 US 642, 109 S Ct 2115, 104 L Ed 2d 733 (1989). If the defendant produces such evidence, the plaintiff can still prevail by showing that other tests or selection devices would also serve the employer's needs without a comparable discrimination effect. *Watson*, 487 US at 997-99.

■      Plaintiffs claim that PGE's interview process had a discriminatory impact on persons over 40 years old. The federal court rejected that claim, because it concluded that the statistical comparison on which plaintiffs relied to show discriminatory impact was flawed. Plaintiffs had submitted a statistical analysis that focused on the 26 employees who, like plaintiffs, had been customer field service representatives and who attempted to obtain other employment with PGE after their positions were eliminated. The federal district court and the Ninth Circuit agreed that the appropriate applicant pool for statistical analysis is the 68 applicants who were interviewed.

Plaintiffs assert that defendant was negligent in failing to present a statistical analysis that took into consideration the entire pool of applicants who were interviewed. That statistical evidence focuses on the point in the hiring process when the pool of 68 interviewed applicants was narrowed to 50. The evidence shows that, of the 68 applicants who were interviewed, 19 were older than 40 years old. Only ten of those 19 were in the group of 50 who remained under consideration after the narrowing process. An age-neutral result would have been that 14 would have been included in the final 50. As the trial court found, and defendant does not dispute, that discriminatory result is statistically significant. Accordingly, plaintiffs assert that, had defendant not been negligent in failing to present that correct statistical analysis in the federal litigation, the federal court would have denied summary judgment on the disparate impact claim and allowed the claim to proceed.

The trial court held that the proper inquiry in this case is not, as plaintiffs assert, on the number of members of the protected class who remained under consideration after

the interview, but instead is on the "bottom line," *i.e.*, those applicants who were actually hired for the positions in the new department. Of the 50 final applicants, 34 were offered jobs. There is no dispute that the bottom line result was statistically nondiscriminatory. Accordingly, the trial court concluded that plaintiffs' evidence about the number of members of the protected class who did not survive the final cut to 50 did not support its claim that defendant had been negligent in failing to present that evidence to the federal court.

Plaintiffs assert that the trial court was wrong in relying on the bottom line numbers of persons hired who were over 40 rather than on the impact resulting from the interim interview process. They rely on *Connecticut v. Teal*, 457 US 440, 102 S Ct 2525, 73 L Ed 2d 130 (1982), in which the Court rejected a bottom line defense when the interim hiring practice constituted a pass/fail barrier to further consideration. Defendant argues that *Teal* does not apply to this case, relying on *Brunet v. City of Columbus*, 642 F Supp 1214 (SD Ohio 1986), *cert den* 485 US 1034 (1988), in which the court held that *Teal* does not apply when interim steps of a hiring process have a disparate impact, but no interim step results in an absolute bar to further consideration. He asserts that the interview process in this case did not constitute a pass/fail barrier, and therefore *Teal* is distinguishable.

In *Teal*, the plaintiffs, who were black, had sought promotions from their employer. The selection process for promotion required, as a first step, a passing score on a written examination. Persons who did not pass the written examination were excluded from further consideration. The plaintiffs took the written examination, but did not pass. The written examination excluded black applicants from further consideration in disproportionate numbers. Of those applicants who remained in the pool after the written examination, the number of black applicants actually promoted did not show a discriminatory impact.

The plaintiffs claimed that the written examination was discriminatory because of its disparate impact on black applicants, and therefore constituted unlawful employment discrimination under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*. The defendant countered that the overall result of the selection process was not discriminatory,

because a higher percentage of blacks were promoted than were whites. The Supreme Court disagreed. It noted that Title VII protects a person's right to equal employment opportunities, which can be violated if individuals are removed from consideration at some interim step of the hiring or promotion process as a result of a discriminatory hiring practice. The Court said:

> "When an employer uses a non-job-related barrier in order to deny a minority or woman applicant employment or promotion, and that barrier has a significant adverse effect on minorities or women, then the applicant has been deprived of an employment *opportunity* 'because of . . . race, color, religion, sex, or national origin.' " 457 US at 448. (Emphasis in original.)

It is the barrier to further consideration that violates the discrimination law.

In *Brunet*, female firefighter applicants brought an employment discrimination claim, alleging that the employer had discriminated against women in its hiring process. The process consisted of various tests, including a written test, which had four parts: a reading comprehension test, a mechanical aptitude test, and two psychological tests; and a physical capabilities test. The ultimate result of the hiring process did not show a discriminatory impact on women. The plaintiffs argued, however, that the court should focus on individual components of the testing process, which would show that women score significantly lower in those particular tests. As a result, the plaintiffs argued, women's overall scores were lower than they would have been without the discriminatory components, and therefore the tests had a discriminatory impact on women.

The court disagreed. It noted that the challenged portions of the testing process were given numerical scores, which were used along with scores on other tests, to rank candidates on an eligibility list. It noted that no one aspect of the testing process precluded candidates from further consideration. Therefore, the court concluded that the reasoning of *Teal* did not apply:

> "*Teal* differs from the instant case in the respect that the challenged component of the selection process, the written

examination, was graded pass/fail. Here, however, the challenged portions of the testing process were given a numerical score, which was used, along with other similar scores, to rank candidates on eligibility lists. Thus, the written examination in *Teal* constituted a 'barrier' in the sense that it precluded candidates from further consideration. The challenged components of the testing process here, even though lower scores on those components may lessen a candidate's overall chance of acceptance, do not preclude further consideration of that candidate." 642 F Supp at 1225.

Because *Teal* was limited to pass/fail barriers, the court concluded that it did not apply. Looking at the bottom line of persons actually hired for the position, the court concluded that the plaintiffs had not shown a prima facie case of disparate impact.

Plaintiffs assert that the subjective interview process in this case constituted a pass/fail barrier and, therefore, *Teal* applies. Because persons over 40 were excluded from further consideration in disproportionate numbers, they argue that they can establish a prima facie case of disparate impact discrimination. Defendant counters that *Teal* does not apply, because PGE's selection process did not include a pass/fail barrier. He asserts that "[n]o one interim step in the process precluded an applicant from further consideration." He claims that the hiring process consisted of numerous steps, of which the interview was only one. In addition, defendant asserts that PGE conducted a post-interview review of all applicants for specific qualities and experience, a follow-up review of those not accepted for the initial cut off, and the possibility of further consideration after the initial cut off. Defendant argues that, as in *Brunet*, the proper inquiry is whether the final result of hiring was discriminatory. He notes that here it was not.

We agree with plaintiffs that *Teal* applies. Even under defendant's view of the selection process, there is no dispute that, at some point, 18 applicants, including plaintiffs, were excluded from further consideration. Defendant's argument seems to be that, because there was some discussion about applicants after the interview scoring process, during which time applicants who had been rejected could be brought back into the process, the interview process did not constitute a pass/fail barrier.

Defendant's view of *Teal* and of plaintiffs' claim is too narrow. The reasoning of *Teal* is that, if a plaintiff shows that a hiring or promotion practice results in barring an applicant from further consideration, and the impact of that practice is discriminatory, the plaintiff has established a prima facie case of discrimination. The plaintiff does not have to show that the final results of the entire process are discriminatory, if at some interim point in the process a disproportionate number of a protected class are precluded from further consideration. That is the case here. Plaintiffs assert that the subjective interview process resulted in a pass/fail barrier to further consideration. We do not read that claim to be that it was *only* the interview *itself* that resulted in discrimination; we understand the claim to be that the entire interview process, during which the field of candidates was narrowed to 50, had a discriminatory impact. Defendant's only response is that, once the 50 applicants were chosen for the list and the other 18 applicants were rejected, there was a brief opportunity for those involved in the hiring process to request that one of the 18 be brought back into the list, so that the applicant would receive further consideration.[5] There is no dispute, however, that, once the opportunity passed for rejected applicants to be brought back in, the list of 50 was the exclusive list from which applicants would be chosen to receive offers. Because those who did not make the list of 50 were barred from further consideration, the process leading to the selection of the 50 constituted a pass/fail barrier to which the reasoning of *Teal* applies. Because plaintiffs' statistical evidence shows that persons over 40 were rejected in disproportionate numbers at that stage, that evidence would have established a prima facie case of disparate impact.

■    Relating our conclusion about the ADEA claim to the malpractice claim in this case, we conclude that, had defendant presented the correct statistical evidence to the federal district court, that court would have concluded that plaintiffs had established a prima facie case, and would have denied

---

[5] Even giving defendant the benefit of his own view of the facts, he does not present any evidence that plaintiffs were still under consideration for the job after the 50 were chosen for the list. Defendant's only assertion is that there was more than one step involved in the interview process that resulted in the list of 50. We fail to see how that fact, even if true, makes a difference.

summary judgment on the disparate impact theory. Therefore, the trial court in this case erred in granting defendant summary judgment on the claim for negligence, because there is a question of fact at least as to the allegation relating to the disparate impact theory.[6]

Although we have concluded that summary judgment should not have been granted on plaintiffs' negligence claim, we nonetheless address the parties' arguments regarding the allegation of negligence relating to the disparate treatment theory of the ADEA case, because it may arise on remand. *See Mintier v. Momb*, 103 Or App 148, 796 P2d 387, *mod* 104 Or App 230, 800 P2d 790 (1990).

■ We turn to plaintiffs' argument that the trial court erred in concluding that there were no genuine issues of material fact on the portion of their claim that is based on their disparate treatment theory in the underlying age discrimination case. A person can prove a claim of age discrimination by showing discriminatory treatment based on age in an employment decision. To establish a prima facie case of disparate treatment on the basis of age, a plaintiff must show that the plaintiff: (1) belongs to a protected class; (2) was performing the job satisfactorily; (3) was discharged; and (4) either (a) was replaced by a substantially younger person with equal or inferior qualifications, or (b) if the plaintiff was discharged as part of a reduction of the work force, that the discharge occurred under circumstances giving rise to an inference of age discrimination. *Rose*, 902 F2d at 1421; *Butler*, 748 F Supp at 790-91. Once the plaintiff has established a prima facie case, the defendant must come forward with some evidence of legitimate, nondiscriminatory reasons for its actions. If the defendant produces such evidence, the plaintiff must show that the reason given was merely pretextual, and that the action was actually motivated by age discrimination. *Butler*, 748 F Supp at 790.

---

[6] We note that we are not called upon to decide whether the final result in the federal case would have been different had defendant presented this evidence. Defendant acknowledges that his motion for summary judgment in this negligence action sought only a determination that plaintiffs could not clear the first hurdle of showing that the result of the federal summary judgment motion would have been different. The other issues involved in the "case within a case" are left for later resolution.

As in the disparate impact claim, the issue relating to this disparate treatment claim is quite narrow. Plaintiffs assert that, if defendant had not been negligent in failing to submit certain evidence to the federal court in response to PGE's motion for summary judgment, the evidence would have shown a genuine issue of material fact regarding whether their discharge occurred under circumstances giving rise to an inference of age discrimination, therefore precluding summary judgment in federal court. Defendant asserts that the evidence that plaintiffs say should have been presented to the federal court either was in fact presented and considered, or adds nothing to what was presented. Accordingly, they argue, the additional evidence would not have made a difference in the federal court's ruling on the disparate treatment theory.

In order for a question of fact to preclude summary judgment in federal court, it must be a *genuine* issue of *material* fact. A genuine issue is one on which

"a fair-minded jury could return a verdict * * * on the evidence presented. The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party opposing summary judgment]." *Anderson*, 477 US at 252.

A material fact is one that is essential to the case, *i.e.*, the fact might affect the outcome of the case under the applicable law. *Id.* at 248.

Plaintiffs claim that the additional evidence would have created a question of fact whether their discharge occurred under circumstances giving rise to an inference of age discrimination. Whether the discharge occurred under circumstances giving rise to an inference of age discrimination is material to their underlying ADEA claim; it is an element they are required to prove. Therefore, the only issue is whether the evidence would have created a genuine question of fact, *i.e.*, whether a reasonable factfinder could find an inference of discrimination from the circumstances surrounding plaintiffs' discharge.

Plaintiffs point to three categories of evidence that they assert defendant negligently failed to submit to the federal court. First, they assert that

"defendant failed to submit many corporate documents that left no doubt that at the highest management levels it was clearly understood that sales and marketing had always been important features of plaintiffs' jobs."

Second, they argue that evidence proving that Elliott, a PGE supervisor, lied when he said that he had interviewed Butler, could lead to an inference that PGE management was attempting to justify Butler's termination on non-discriminatory grounds. Finally, they argue that the evidence defendant submitted on their behalf in federal court was "fragmented, sometimes unmarked and incomplete," with the result that the strength of plaintiffs' case was diminished.

The trial court concluded that the additional evidence would not have altered the result in the federal court. It said:

"In opposition to the motion for summary judgment in this case, plaintiffs offer voluminous additional excerpts from depositions and exhibits summarized in a 63 page 'Summary of Evidence.' These materials were all either adequately excerpted and presented in the underlying case, or if not presented would have been simply cumulative. They offer nothing new or more persuasive than that which was rejected in the underlying case."

The trial court was correct. The evidence that plaintiffs assert would show that higher management of PGE understood that sales and marketing had always been important features of plaintiffs' jobs would not have assisted plaintiffs. The federal court held that there was a question of fact whether the position that was eliminated and the new positions created were equivalent. Further evidence on that issue would not have assisted plaintiffs.

Additional evidence that PGE supervisor Elliott lied when he said that he had interviewed Butler similarly would not have affected the outcome of the federal summary judgment motion. The federal court had before it Elliott's statement that he had interviewed Butler and Elliott's detailed report about the interview. The court also had before it Butler's affidavit in which he said that Elliott did not interview him, but two other people did. That evidence created a question of fact about whether Elliott was lying about having interviewed Butler. That question of fact did not cause the

federal court to grant summary judgment. Plaintiffs assert that defendant should have submitted additional evidence that would have established beyond a doubt that Elliott lied. They argue that the additional proof of the lie would implicate PGE management in a "conscious and somewhat elaborate effort to justify Butler's termination on non-discriminatory grounds." Plaintiffs do not explain how further evidence that Elliott had lied would have changed the federal court's view of an already disputed fact.

Finally, plaintiffs have not persuaded us that a less fragmented or more complete presentation of evidence in federal court would have changed the result there. The main thrust of plaintiffs' argument is that defendant should have presented a portion of Ruth Mogen's deposition in which she said that the company was willing to incur "reduction in force" costs in order to rid itself of older employees. However, the portion of Mogen's deposition that defendant did present to the federal court included essentially the same information. It related that Mogen had written a letter to the EEOC that said:

> "I have heard that management is willing to pay the up front costs of eliminating, quote, seasoned, close quote, employees while retaining the younger, less costly employees."

The federal court did not find that evidence sufficient to raise an inference of discrimination. We do not see how the evidence that plaintiffs now assert defendant should have presented could have changed the federal court's ruling. On this summary judgment record, there was no question of fact regarding the portion of plaintiffs' claim for negligence that is based on the discriminatory treatment theory of their age discrimination claim.

Judgment on negligence claim reversed and remanded; otherwise affirmed.