Argued and submitted April 11, affirmed August 20, 1997

## Glenn BUTLER
### and Farley Flynn,
*Appellants,*

*v.*

## Timothy J. VANAGAS
### and Jennings & Vanagas,
*Respondents.*

## (9206-04303; CA A93232)

944 P2d 972

Charles W. Carnese argued the cause and filed the briefs for appellants.

Thomas W. Brown argued the cause for respondents. With him on the brief were Kathleen J. Hansa, David H. Williams and Cosgrave, Vergeer & Kester, L.L.P.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiffs appeal the trial court's grant of summary judgment in favor of defendant in this legal malpractice case. We affirm.

This is our second decision in this case. Our previous opinion adequately states the basic facts. *Butler v. Vanagas*, 135 Or App 1, 897 P2d 1176 (1995). As relevant to this appeal, plaintiffs allege that defendant,[1] who represented them in an age discrimination case against Portland General Electric (PGE), was negligent in responding to PGE's motion for summary judgment in that case. They assert that he should have included additional evidence in opposing that motion and that, if he had, they would have defeated the motion. As with the previous appeal, defendant does not dispute, for the purposes of his motion for summary judgment, that there is evidence that would support a finding that he was negligent in at least some of the ways that plaintiffs allege. He moved for summary judgment in this case on the ground that the ultimate result in the original case would have been the same even if he had included that evidence. If defendant is correct, any negligence would not have harmed plaintiffs, and they could therefore not prevail against him.

Because plaintiffs brought the original case in federal court, we must evaluate the evidence as the Ninth Circuit Court of Appeals would have evaluated it. In our previous opinion, we applied the baroque burden shifting rules that apply in federal civil rights litigation,[2] to the evidence that plaintiffs presented. We held that, under those rules, plaintiffs had established a prima facie case of disparate impact because they had shown that the process of reducing the original group of 68 interviewed candidates to a group of 50 for serious consideration had a statistically significant discriminatory effect on candidates who were over 40 years old.

---

[1] As in our previous opinion, we refer to both defendants as a unit.

[2] In *Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 76-79, 717 P2d 1252 (1986), we held, relying on *City of Portland v. Bureau of Labor and Ind.*, 298 Or 104, 115, 690 P2d 475 (1984), that "the convoluted burden shifting formula" that applies in federal civil rights law plays no role under the Oregon civil rights acts. 79 Or App at 78-79 n 3. We must apply those rules in this case, however, because the question before us on the "case within a case" is one of federal law.

We also held that plaintiffs had failed to establish a prima facie case of disparate treatment.

On remand the court again granted summary judgment for defendant on both theories of discrimination. We first consider the disparate treatment theory. Defendant argues that we conclusively resolved that theory against plaintiffs in our previous decision and that the doctrine of law of the case therefore precludes them from raising it again. Defendant misunderstands our previous opinion. Plaintiffs assert a *single* negligence claim, in which they allege that defendant was negligent with regard to *both* the disparate treatment and the disparate impact theories. In the original appeal, the trial court had granted summary judgment to defendant on that single claim in negligence. In our opinion on that appeal, we held that the trial court was wrong as to the disparate impact theory. That holding required reversal of the summary judgment on the *entire* negligence claim. After reaching that decision, we went on to consider the disparate treatment theory because the issue would arise on remand. 135 Or App at 12. We held that, "[o]n *this* summary judgment record," plaintiffs had failed to establish a prima facie case. 135 Or App at 15 (emphasis supplied). Because we necessarily reversed the entire negligence claim, that holding did not foreclose plaintiffs from creating a different record on a different motion for summary judgment.

On the merits, we hold that plaintiffs again failed to establish a prima facie case of disparate treatment. They rely on the same evidence as on the previous appeal, supplemented by the statistical evidence that the interview selection process had a disparate impact on persons over 40. Although statistical evidence may be relevant to a disparate treatment claim in some circumstances, *see Mangold v. California Public Utilities Com'n.*, 67 F3d 1470, 1476 (9th Cir 1995), in this case the statistical evidence does not add to the existing evidence of discriminatory intent, which we previously held to be insufficient. The evidence as a whole, therefore, remains insufficient to create a prima facie case.

We turn to the disparate impact theory. In our previous opinion, we held that plaintiffs had established a prima

facie case that the interview selection process had a disparate impact on persons over 40 years old. Under the federal burden shifting scheme, it then became defendant's responsibility to articulate PGE's business justification for using that process. *See Wards Cove Packing Co. v. Antonio*, 490 US 642, 658, 109 S Ct 2115, 104 L Ed 2d 733 (1989).[3] The court must engage in a "reasoned review of the employer's justification" of the challenged practice. The court should reject an insubstantial justification, but the practice does not need to be essential to the employer's business in order to pass scrutiny. 490 US at 659.[4] The evidence that we evaluate includes *both* the evidence that defendant submitted in the federal court case *and* the additional evidence that plaintiffs have presented in this case. If that evidence, as a whole, would not have led to a different result in the federal court case, any negligence of defendant in offering only part of the total evidence would not have damaged plaintiff.

■ Defendant asserts that PGE developed the interview process in order to determine whether the applicants had the attributes of successful salespeople. It identified those attributes, developed an interview format to test applicants concerning those attributes, developed job descriptions based on them, and trained interviewers in the requirements of interviewing. PGE also developed a procedure for the interviewers to reach consensus both on what constituted adequate responses and on whether a particular response was adequate. The interviewers then reduced the applicant pool from 68 to 50 based on the applicants' weighted answers to the interview questions.

---

[3] Congress modified some aspects of the holding in *Wards Cove Packing Co. v. Antonio*, 490 US 642, 658, 109 S Ct 2115, 104 L Ed 2d 733 (1989), when it adopted the Civil Rights Act of 1991. Pub. Law 102-166, § 105, 105 Stat 1071, 1074-75, *codified at* 42 USC § 2000e-2(k). Because the events involved in plaintiffs' claim in the original case occurred before 1991, and because the Act is not retroactive, *Landgraf v. USI Film Products*, 511 US 244, 114 S Ct 1483, 128 L Ed 2d 229 (1994); *Rivers v. Roadway Express, Inc.*, 511 US 298, 114 S Ct 1510, 128 L Ed 2d 274 (1991), the changes are not relevant to our decision.

[4] The employer may also attempt at this stage to discredit the plaintiff's statistics or may proffer statistics of its own to show that no disparity exists. *See Rose v. Wells Fargo & Co.*, 902 F2d 1417, 1424 (9th Cir 1990). Defendant did neither of those things.

448

■     In challenging PGE's process, plaintiffs rely on a report by Buckner, an industrial psychologist, that raised questions about the adequacy of each of those steps.[5] However, the employer's burden at this stage is simply to produce evidence of a business justification for the practice; the burden of persuasion remains with the plaintiff. *Wards Cove*, 490 US at 659. On this record, a jury could find that PGE's interview process was less than perfect; it could not find, however, that the justification for it was insubstantial. As a result, defendant has satisfied his burden of production.

■     Defendant's success in meeting the burden of production does not resolve the issue, however. Plaintiffs may still prevail by showing that other methods of selection, which did not have the same discriminatory effect as the method that PGE used, would also have served PGE's legitimate needs. Those alternative practices must be at least as effective as PGE's chosen procedures in achieving its legitimate employment goals. Factors such as the cost or other burden of the alternative practices are relevant in this regard. *See Wards Cove*, 490 US at 660-61.

■     This stage of the burden shifting process is comparable to the "pretext" stage of a disparate treatment case, and the Supreme Court has suggested that failure to adopt the suggested alternatives belies a claim that the challenged practices are being used for nondiscriminatory reasons. *Wards Cove*, 490 US at 661. However, it is inconsistent with the nature of a disparate impact case to focus on the employer's intent. It may be more accurate to say that the existence of an alternative, nondiscriminatory practice that satisfies the employer's needs shows that it is not necessary for the employer to use a practice that has a discriminatory impact. That showing, thus, overcomes the evidence of business justification that the employer offered at the previous stage of the burden shifting process.

■     Plaintiffs rely on the Buckner report to show that PGE had alternative practices available. PGE designed the interview process to focus on the "below the line" skills of ego, drive, competitive nature, empathy, independence, and the

[5] We discuss below some of the problems that Buckner identified.

ability to instill trust and confidence in a customer. Buckner pointed out that younger applicants are generally seen as having characteristics that include efficiency, motivation, ambition, eagerness, and adaptability. A jury could find from this information that the "skills" on which PGE focused in its interviews are generally those that are identified with younger applicants.

Buckner also described the proper procedure for developing an interview process. That procedure includes (1) analyzing the job to determine the tasks that are necessary for successful performance; (2) determining the knowledge, skills, and abilities (KSAs) that are necessary to perform those tasks; and (3) developing the content of the interview so that it is representative of the critical KSAs. She pointed out that there is no indication that PGE reviewed similar jobs in other companies or that it attempted to document the relationship between the jobs at issue and the literature review that was the basis for its information about these specific positions. She concluded that

> "it is difficult to determine the job-relatedness of the attributes that form the basis of the interview used at PGE. However, PGE's process of developing the content of the interview seems to fall somewhat short of professional standards."

Buckner then discussed the development of PGE's interview process in some detail, describing deficiencies in its job-relatedness, scope, and format and in the training of the interviewers, their knowledge of job requirements, and their evaluation of the responses. She summarized her conclusions:

> "PGE's interview process was not developed directly from KSAs identified through a job analysis, so it has not been shown to be content valid. The attributes were identified through a broadly defined literature search of sales applicants in situations that may or may not be related to PGE, and they assess personality characteristics that may or may not be tied to required knowledge, skills, and abilities. There was little interviewer training to reduce the chance of subjective bias in interpreting the broad attributes, and the scoring was global and ill-defined."

She then gave her opinion that, based on these deficiencies,

> "an alternative device *could* have been developed that would more closely follow professional guidelines, would show a greater relationship to job success, and *might* result in less bias against older applicants." (Emphasis supplied.)

Buckner did not make any attempt to describe the alternative device that she said PGE might have developed.

One could conclude from Buckner's report that PGE's interview process contained significant weaknesses, and one might even use her criticisms as the basis for developing an alternative that was free from those weaknesses. However, neither she nor plaintiffs have actually developed such an alternative. As a result, there is nothing that the court or the jury could compare to the process that PGE used. It is thus impossible to determine whether an alternative process would either have had less of a discriminatory impact or would have served PGE's business needs as adequately as the process that PGE used. Those determinations are essential to plaintiffs' disparate impact claim at this stage of the burden shifting process, and the inability to make them means that their claim fails. Because that claim fails even if defendant was negligent in representing plaintiffs, that negligence did not cause them any damages. They have, therefore, failed to establish an essential element of their malpractice claim.

Affirmed.