567 S.E.2d 661

**Harold MOORE, Clifford Cutlip, Michael Jackson, Fred Morgan, Ted Rife, Richard Keener, Pat Vavrock, Steve Slavensky and Edward Cummings, Plaintiffs Below, Appellants,**

v.

**CONSOLIDATION COAL COMPANY, and Consolidation Coal Company Morgantown Operations, Defendants Below, Appellees.**

No. 29992.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 5, 2002.

Decided July 1, 2002.

Concurring Opinion of Chief Justice Davis July 3, 2002.

---

Jacques R. Williams, Esq., Hamstead, Hamstead & Williams, Morgantown, Larry W. Mayfield, Esq., Gianola, Barnum & Wigal, Morgantown, C. Paul Estep, Esq., Kingwood, for Appellants.

Stephen M. LaCagnin, Esq., Jackson & Kelly, Morgantown, Robert M. Vukas, Esq., Consol, Inc., Pittsburgh, PA, for Appellees.

McGRAW, Justice.

Appellants in this case are eight coal miners [1] who brought suit against appellee Consolidation Coal Company ("Consol") under the West Virginia Human Rights Act (the "Human Rights Act"), W. Va.Code §§ 5–11–1 to –20, alleging that Consol, in the process of closing its Arkwright mine in 1995, systematically discriminated against them on the basis of age by transferring younger employees to other mine operations while leaving them to face termination when the mine ultimately shut down. Following trial on these claims, the jury found in favor of Consol, and appellants now appeal arguing that the lower court erred at trial by (1) prohibiting them from calling two rebuttal witnesses; and (2) refusing to admit evidence that Consol had previously employed alternative procedures for implementing layoffs at other facilities,

---

1. One plaintiff below, Richard Keener, was dismissed prior to trial and is not a party to the instant appeal.

which, had they been utilized at the Arkwright mine, would have resulted in a less disproportionate impact upon older workers. We find merit in appellants' second argument, and accordingly reverse.

## I.

## BACKGROUND

Appellants were employed by Consol as salaried foremen and mine engineers at the company's Arkwright mine in Monongalia County during the period immediately preceding its closure in October 1995. Beginning in March 1994, Consol began offering a number of employees transfers to other company facilities. In determining which employees would be extended such offers, Consol employed a ranking system predicated upon employee performance evaluation scores, with transfer decisions normally being made with respect to individual performance in specific job classifications, although consideration was at times given to transferring employees to other positions for which they were qualified.

Appellant's theory of the case was that Consol intentionally lowered the evaluation scores of older employees during the period leading up to the mine closure, such that the performance-based method chosen by the company for allotting transfer opportunities would result in the ultimate termination of a greater proportion of older workers. The only direct evidence supporting this version of events was testimony by appellant Harold Moore, who stated that soon after rumors surfaced that the Arkwright mine would be closing, he was told in 1993 by Arkwright's superintendent, Terry Suder, to "watch out for the evaluations," as "there's a good chance that evaluations on persons that they are going to get rid of [are] going to be low." (Mr. Suder testified at trial and denied making such statements.) Mr. Moore further testified that in fact, the evaluation scores he received for the annual period ending in July 1993 were significantly lower than those he would receive just one year later.

Appellants relied heavily upon statistical evidence to buttress their claim that Consol's conduct was at least partially motivated by

discriminatory intent. Appellants' expert in labor economics and econometrics, Professor Clifford Hawley, Ph.D., testified to having reviewed data regarding Consol's transfer decisions concerning 29 persons holding positions comparable to those of appellants who were employed at the Arkwright mine during the period preceding closure. Of these 29 employees, a total of 24 were over the age of 40. While according to appellants' version of the facts all five of the employees under the age of 40 were permitted to transfer to other jobs, only nine of the 24 persons over the age of 40 were given similar offers. Professor Hawley testified that this disparity was statistically significant in that the odds of an age-neutral process obtaining such a result was one in 59. Consol's expert statistician, Dennis Brady, Ph.D., criticized Professor's Hawley's methodology, particularly the choice to concentrate only on a limited number of job categories. Doctor Brady also testified that his analysis of the closure of the Arkwright mine indicated that it resulted in a greater overall percentage of younger workers retaining employment with Consol.

After a trial conducted on August 14–21, 2000, the jury found in favor of Consol in all respects. Appellants' subsequent motion for a new trial, which raised the same arguments as advanced herein, was denied on April 13, 2001, and this appeal followed.

## II.

## STANDARD OF REVIEW

■ Trial courts are customarily accorded considerable discretion in making evidentiary rulings. As we explained in syllabus point 9 of *Tudor v. Charleston Area Medical Center, Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997):

"The West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admission of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard."

(Quoting syl. pt. 1, in part, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995)). *Accord* syl. pt. 10, *Board of Ed. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990) ("Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.") (citations and internal quotation marks omitted); syl. pt. 6, *State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983) ("The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.").

## III.

## DISCUSSION

Appellants assert that the trial court committed reversible error in this case by refusing to permit them to introduce evidence that Consol had previously utilized alternative procedures at other mine locations to determine those employees who would be terminated in the course of workforce reductions—methods which in this case, according to appellants, would have resulted in the retention of a greater number of workers within the protected class of persons over the age of forty.[2] Appellants contend that such evidence was probative of whether Consol's explanation for its employment decisions was pretextual.

The evidence at issue is set forth in a deposition taken of Consol's human resources manager, Joseph Nypaver. Mr. Nypaver testified that Consol had used as many as seven different ranking methods to make employment decisions in implementing reductions in force. At least two of the seven ranking procedures took into consideration either the employee's years of service or both service and age, and were utilized by Consol at approximately the same time as it used the straightforward evaluation scoring method at the Arkwright mine. One of these was described by Mr. Nypaver as involving "evaluation scores and service," which consisted of

a method where we would take evaluation scores from the last couple of years ... and come up with ... either a 70, 75, or 80 percent weight for that particular part of the evaluation score and then give them the corresponding 20, 25, or 30 percent weight for length of service. .

Mr. Nypaver testified that this method had been employed at a number of Consol's mines dating from the late 1980s until the late 1990s. The second such ranking method employed by Consol was based upon a similar weighting technique involving the three factors of "evaluation scores, service, and age," which, according to Mr. Nypaver, was used in connection with at least three mines from the early 1990s until the present.

In addition to the testimony of Mr. Nypaver, appellants also indicated that they intended to elicit testimony from their expert, Professor Hawley, regarding the statistical effect that such alternative procedures would have had on older workers had they been utilized in connection with the closure of the Arkwright mine.

Prior to trial, Consol brought a motion *in limine* objecting to the introduction of any evidence dealing with such alternative ranking systems, arguing that it was not relevant to any matter at issue in the case. The circuit court granted Consol's motion during a hearing conducted on August 14, 2000, stating from the bench that any "method that [Consol] used to determine whose job was saved and whose job was not is not relevant unless it can be demonstrated that there's a discriminatory animus, and that was the Court's ruling before."[3]

---

**2.** The Human Rights Act protects individuals from discrimination based upon, among other characteristics, "age," which is defined as "the age of forty or above[.]" W. Va.Code § 5–11–3(k) (1998). Discrimination means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to sepa-

rate or segregate[.]" W. Va.Code § 5–11–3(h) (1998).

**3.** The circuit court had previously ruled, in response to an earlier motion *in limine* by Consol, that appellants were prohibited from introducing evidence regarding any Consol layoff policies which post-dated the October 9, 1995 closure of the Arkwright mine.

In support of the circuit court's ruling, Consol argues that it is permitted under West Virginia law to choose any non-discriminatory method for effectuating its employment decisions. Consol points to language from *Romney Housing Auth. v. West Virginia Human Rights Comm'n*, 185 W.Va. 208, 406 S.E.2d 434 (1991), where we stated that

> [i]n a human rights case ... the question is not whether an employment decision was essentially fair or whether it was made in accordance with pre-established procedures. The question is whether the individual was discriminated against because of race, religion, color, national origin, ancestry, sex, age, blindness, or handicap.

*Id.* at 212, 406 S.E.2d at 438 (citation omitted).[4] This line of reasoning simply proves too much.[5] Appellants did not seek to have the evidence dealing with alternative procedures admitted for the mere purpose of showing that the method used at the Arkwright mine was inequitable or unfair; rather, it was intended to serve as circumstantial proof that Consol intentionally chose to employ a purely performance-based evaluation method in the present case in order to insure that a greater proportion of older workers would be terminated. According to appellants, this evidence would have bolstered their claim that Consol had purposely manipulated the evaluation scores given to these employees in order to effect such a result.

This case is predicated solely upon a claim of disparate treatment. Under the Human Rights Act, such a claim of discrimination is governed by the familiar three-step evidentiary framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the *McDonnell Douglas/Burdine* structure,

> "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' .... Third, should the de-

**4.** The Court made a similar statement in *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996), admonishing that "our discrimination laws are not a form of job assurance for handicapped individuals or any other protected class members. Employers retain the right to restructure jobs and exercise business judgment, including even bad judgment. Employees can be let go for any reason or for no reason, provided that the reason is not a prohibited one." *Id.* at 79, 479 S.E.2d at 589 (citation omitted).

**5.** Consol brings our attention to several cases from other jurisdictions which purportedly support its position that appellant's evidence pertaining to alternative procedures was irrelevant. We do not find these to be apposite in the present context, as none of them involve the evidentiary question that is presented to this Court.

For example, Consol relies heavily upon *Anderson v. HCA Deer Park Hosp.*, 834 F.Supp. 183 (S.D.Tex.1993), where the plaintiffs brought disparate treatment claims against the employer alleging that it had utilized a racially discriminatory selection process when it underwent a reorganization and related reduction in force. In implementing the reduction in force that resulted in the termination of the plaintiff mental health workers, the employer in *Anderson* relied upon a procedure whereby retention decisions were based upon an employee's seniority in a particular unit of the hospital. This procedure resulted in five of nine black workers in plaintiffs' unit being terminated, while all five white mental health workers were retained. Approximately five months later, the employer used a different method to implement a second round of layoffs, which resulted in the layoff of six white and one black mental health workers. Following a bench trial in which the evidence of the employer's use of an alternative procedure *was* introduced into evidence, the district court found in favor of the defendant hospital, stating that "[p]laintiffs have made no showing ... that the selection criterion utilized in the layoff was applied to them in a discriminatory manner because of their race." 834 F.Supp. at 190. Consol points to additional language where the *Anderson* court went on to note that "[w]ere the court to conclude that a different method for selecting candidates for layoff might operate more fairly, this would not assist plaintiffs, as the discrimination laws are 'not intended to be a vehicle for judicial second guessing of business decisions, nor ... to transform the courts into personnel managers.'" *Id.* (citations omitted). Rather than making a determination as to the relevance of evidence dealing with alternative procedures, the *Anderson* court merely made a determination that the plaintiffs had failed to carry their burden to show that the hospital's chosen procedure was selected with an intent to discriminate. Other cases cited by Consol similarly fail to address the evidentiary issue posed in the present case.

fendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Shepherdstown Volunteer Fire Dep't v. State ex rel. West Virginia Human Rights Comm'n,* 172 W.Va. 627, 637, 309 S.E.2d 342, 352 (1983) (quoting *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093, 67 L.Ed.2d at 215); *see also Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 483, 457 S.E.2d 152, 160 (1995); *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986).

■ As was pointed out in *Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 479 S.E.2d 561 (1996), " '[t]he shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the "plaintiff [has] his day in court despite the unavailability of direct evidence." ' " *Id.* at 71, 479 S.E.2d at 581 (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523, 533 (1985)). Under the third step of the ordering of proof, a plaintiff is required to show, by a preponderance of the evidence, that the defendant's proffered reason was not the actual motivating force behind its adverse employment action. *See Wynne v. Tufts Univ. School of Med.,* 976 F.2d 791, 796 (1st Cir.1992) ("When pretext is at issue in a discrimination case, it is a plaintiff's duty to produce specific facts which, reasonably viewed, tend logically to undercut the defendant's position."). Such a demonstration of pretext permits a jury to infer discriminatory motive on the part of the employer:

> In disparate treatment cases under the West Virginia Human Rights Act, W. Va. Code, 5–11–9 (1992), proof of pretext can by itself sustain a conclusion that the defendant engaged in unlawful discrimination. Therefore, if the plaintiff raised an inference of discrimination through his or her prima facie case and the fact-finder disbelieves the defendant's explanation for

the adverse action taken against the plaintiff, the factfinder justifiably may conclude that the logical explanation for the action was the unlawful discrimination.

Syl. pt. 5, *Skaggs, supra; accord* syl. pt. 5, in part, *Barefoot, supra* ("A finding of pretextuality allows a juror to reject a defendant's proffered reasons for a challenged employment action and, thus, permits the ultimate inference of discrimination.").

■ Importantly, we have made clear that a plaintiff in a disparate treatment case may establish an inference of discriminatory motive on the part of an employer through the introduction of circumstantial as well as direct evidence:

> In disparate treatment discrimination cases under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), a plaintiff can create a triable issue of discrimination animus through direct or circumstantial evidence. Thus, a plaintiff who can offer sufficient circumstantial evidence on intentional discrimination may prevail, just as in any other civil case where the plaintiff meets his or her burden of proof. The question should not be whether the evidence was circumstantial or direct, but whether the evidence in its entirety was strong enough to meet the plaintiff's burden of proof.

Syl. pt. 7, *Skaggs, supra.* As we explained in *Conaway,* "[b]ecause discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." 178 W.Va. at 170–71, 358 S.E.2d at 429–30 (footnote omitted).

■ While this case is not predicated upon an allegation of disparate impact,[6] we

---

**6.** As we explained in *Morris Mem'l Convalescent Nursing Home, Inc. v. West Virginia Human Rights Comm'n,* 189 W.Va. 314, 431 S.E.2d 353 (1993),

there are two theories of employment discrimination, the disparate impact theory and the disparate treatment theory. The first theory focuses on the discriminatory effect of the employer's acts, the second on the discriminatory

nevertheless find instructive the concepts developed and applied under this separate approach to proving discrimination. This Court established a framework for litigating claims of disparate impact in syllabus point three of *West Virginia Univ./West Virginia Bd. of Regents v. Decker*, 191 W.Va. 567, 447 S.E.2d 259 (1994):

> In proving a prima facie case of disparate impact under the Human Rights Act ..., the plaintiff bears the burden of (1) demonstrating that the employer uses a particular employment practice or policy and (2) establishing that such particular employment practice or policy causes a disparate impact on a class protected by the Human Rights Act. The employer then must prove that the practice is "job related" and "consistent with business necessity." *If the employer proves business necessity, the plaintiff may rebut the employer's defense by showing that a less burdensome alternative practice exists which the employer refuses to adopt. Such a showing would be evidence that employer's policy is a "pretext" for discrimination.*

(Emphasis added.) *See also* syl. pt. 6, *Barefoot*, 193 W.Va. 475, 457 S.E.2d 152.

Although *Decker's* allusion to "pretext" in relation to claims of disparate impact is somewhat misdirected, as a plaintiff is not required in this context to prove discriminatory motive on the part of the employer,[7] the relationship between the existence of alternative practices and a showing of pretext is

motive of the employer. More specifically, the disparate impact theory is invoked to attack facially neutral policies which, although applied evenly, impact more heavily on a protected group. Under the disparate treatment theory, the complainant must show that the employer treats some people less favorably than others because they belong to a protected class. Thus, a complainant asserting a disparate treatment theory must prove discriminatory intent to prevail, while a complainant asserting a disparate impact theory need not offer any such proof.

*Id.* at 317, 431 S.E.2d at 356 (citations and internal quotation marks omitted); *see also Guyan Valley Hosp., Inc. v. West Virginia Human Rights Comm'n*, 181 W.Va. 251, 253, 382 S.E.2d 88, 90 (1989) ("If a plaintiff cannot prove *intentional discrimination* under the disparate treatment theory, he may proceed under a disparate impact theory. This is appropriate when a facially-neutral hiring policy has the effect of irra-

nevertheless valid. The United States Supreme Court has explained that where a plaintiff "come[s] forward with alternatives to [the employer's] hiring practices that reduce the ... disparate impact of practices currently being used, and the [employer] refuse[s] to adopt these alternatives, such a refusal would belie a claim by [the employer] that [its] incumbent practices are being employed for nondiscriminatory reasons." *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 660–61, 109 S.Ct. 2115, 2127, 104 L.Ed.2d 733 (1989). Evidence of an employer's alternative practices, particularly those that have been used prior to or contemporaneous with the practice which is alleged to serve as a vehicle for intentional discrimination, is certainly no less probative of pretext or discriminatory motive when it is employed in the context of a disparate treatment claim.

Appellants argue that this evidence of alternative procedures was all the more relevant in the present case because of their reliance upon statistical evidence to demonstrate that Consol's explanations for choosing the performance evaluation method for effectuating its reduction in force were pretextual. We agree. This Court has recognized that " '[d]isparate impact in an employment discrimination case is ordinarily proved by statistics[.]' " Syl. pt. 2, *Dobson v. Eastern Assoc. Coal Corp.*, 188 W.Va. 17, 422 S.E.2d 494 (1992) (quoting syl. pt. 3, in part, *Guyan Valley Hospital, Inc. v. West Virginia Human Rights Comm'n*, 181 W.Va. 251, 382 S.E.2d 88 (1989)). We have likewise indicat-

tionally excluding persons in a protected class.") (emphasis in original), *overruled on other grounds, West Virginia Univ./West Virginia Bd. of Regents v. Decker*, 191 W.Va. 567, 447 S.E.2d 259 (1994).

7. An Oregon court has remarked that

> it is inconsistent with the nature of a disparate impact case to focus on the employer's intent. It may be more accurate to say that the existence of an alternative, nondiscriminatory practice that satisfies the employer's needs shows that it is not necessary for the employer to use a practice that has a discriminatory impact. That showing, thus, overcomes the evidence of business justification that the employer offered at the previous stage of the burden shifting process.

*Butler v. Vanagas*, 149 Or.App. 443, 448, 944 P.2d 972, 975 (1997).

ed with respect to disparate treatment cases that "[s]tatistical evidence may be employed by a plaintiff in proving a claim of age discrimination in employment under the West Virginia Human Rights Act, W. Va.Code, 5–11-1, *et seq.*" Syl. pt. 3, in part, *Dobson v. Eastern Assoc. Coal Corp.*, 188 W.Va. 17, 422 S.E.2d 494 (1992); *see also Conaway*, 178 W.Va. at 171, 358 S.E.2d at 430 (stating that circumstantial evidence of purposeful discrimination may include "statistics in a large operation which show that members of the protected class received substantially worse treatment than others") (footnote omitted). As one court has explained, such evidence

> is relevant because it can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices. Such a discriminatory pattern is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue.

*Diaz v. AT & T*, 752 F.2d 1356, 1363 (9th Cir.1985). " 'In many cases the only available avenue of proof is the use of ... statistics to uncover clandestine and covert discrimination by the employer or union involved.' " *International Broth. of Teamsters v. United States*, 431 U.S. 324, 340 n. 20, 97 S.Ct. 1843, 1857 n. 20, 52 L.Ed.2d 396 (1977) (quoting *United States v. Ironworkers Local 86*, 443 F.2d 544, 551 (9th Cir.), *cert. denied*, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971)).

Just as with cases predicated upon claims of disparate impact, the use of statistical evidence to establish improper motive on the part of an employer in choosing a particular procedure for making an employment decision raises the inherent question of whether the employer has at its disposal alternative methods for making such determinations that are less onerous with respect to the protected class than the procedure actually employed. In fact, neither of these two forms of proof standing alone are particularly helpful to a trier of fact who is faced with the question of whether an employer has acted with discriminatory purpose: "[W]hile statis-

tics may be used to demonstrate that the employer's proffered reason for discharge is pretextual, standing alone they are not likely to establish a case of individual disparate treatment." *Rummery v. Illinois Bell Telephone Co.*, 250 F.3d 553, 559 (7th Cir.2001) (citation omitted); *see also Sengupta v. Morrison–Knudsen Co., Inc.*, 804 F.2d 1072, 1075 (9th Cir.1986) (recognizing that while "statistics have a place in a disparate treatment case, their utility 'depends on all of the surrounding facts and circumstances' ") (quoting *International Bhd. of Teamsters*, 431 U.S. at 340, 97 S.Ct. at 1857).

■ This Court consequently holds that in disparate treatment discrimination cases arising under the Human Rights Act, W. Va.Code § 5-11-9 (1998), where a plaintiff seeks to introduce statistical evidence in an effort to prove that a particular procedure utilized by the employer is intentionally discriminatory based upon its disproportionate impact upon workers in a protected class, evidence of the employer's utilization of alternative procedures having a more proportionate impact upon the protected class is relevant and admissible to further prove that the employer acted with discriminatory purpose. The circuit court therefore abused its discretion in this case by refusing to admit crucial evidence of Consol's alternative procedures for effectuating workforce reductions.[8]

### IV.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Monongalia County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Chief Justice DAVIS and Justice MAYNARD concur and reserve the right to file concurring opinions.

DAVIS, C.J., concurring.

(Filed July 3, 2002)

In this case the plaintiffs sought a new trial in their age discrimination suit brought

---

8. Appellants also contend that the lower court erred by refusing to permit rebuttal testimony from two witnesses on the basis of appellants' failure to disclose such witnesses pursuant to the court's scheduling order. Since we reverse on other grounds and this issue is unlikely to resurface upon remand, we do not address it.

against their former employer. The plaintiffs alleged that the trial court committed reversible error in excluding evidence of alternative layoff methods previously used by the defendant. The majority agreed with the plaintiffs and awarded a new trial. I concur in the disposition of this case by the majority. I have chosen to write separately because I believe "the majority's opinion confuse[s] the standards for disparate treatment and disparate impact discrimination cases[.]" *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 172, 358 S.E.2d 423, 431 (1986) (McGraw, C.J., dissenting)

The majority opinion contends that "[t]his case is predicated solely upon a claim of disparate treatment." I disagree. This case presents a classic example of a disparate impact theory of discrimination.

Our cases allow recovery for unlawful discrimination premised upon theories of disparate treatment and disparate impact. In syllabus point 3 of *Conaway,* this Court set out the elements of a prima facie claim of disparate *treatment:*

> In order to make a prima facie case of [disparate treatment] employment discrimination under the West Virginia Human Rights Act, W. Va.Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following:
>
> (1) That the plaintiff is a member of a protected class.
>
> (2) That the employer made an adverse decision concerning the plaintiff.
>
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

178 W.Va. 164, 358 S.E.2d 423 (1986). In syllabus point 3 of *West Virginia Univ. v. Decker,* 191 W.Va. 567, 447 S.E.2d 259 (1994), on the other hand, we set out the framework for litigating a disparate *impact* theory of liability:

> In proving a prima facie case of disparate impact under the Human Rights Act, *W. Va.Code* 5–11–1 [1967] *et seq.,* the plaintiff bears the burden of (1) demonstrating that the employer uses a particular employment practice or policy and (2) establishing that such particular employment practice or policy causes a disparate im-

pact on a class protected by the Human Rights Act. The employer then must prove that the practice is "job related" and "consistent with business necessity." If the employer proves business necessity, the plaintiff may rebut the employer's defense by showing that a less burdensome alternative practice exists which the employer refuses to adopt. Such a showing would be evidence that employer's policy is a "pretext" for discrimination.

The foregoing authority demonstrates that we have developed two tests for showing unlawful discrimination. Each test focuses on a different issue. "Unlike disparate treatment analysis, which turns on illegal motive, disparate impact turns on discriminatory effect." *Decker,* 191 W.Va. at 572, 447 S.E.2d at 264. The "[d]isparate treatment [model] is applicable to claims of intentional discrimination, as opposed to claims that a facially neutral practice is having disparate impact upon a protected class." *Decker,* 191 W.Va. at 570–571, 447 S.E.2d at 262–263. *See also Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 74–75, 479 S.E.2d 561, 584–585 (1996) ("The crux of disparate treatment is, of course, discriminatory motive; the doctrine aims squarely at intentional acts."). Conversely, "[t]he disparate impact model bars an employer from relying on employment criteria that disproportionately affect a protected class[.]" *Skaggs,* 198 W.Va. at 63, 479 S.E.2d at 573 (citation omitted). *See also Morris Mems. Convalescent Nursing Home, Inc. v. West Virginia Human Rights Com'n,* 189 W.Va. 314, 317, 431 S.E.2d 353, 356 (1993) ("More specifically, '[t]he disparate impact theory is invoked to attack facially neutral policies which, although applied evenly, impact more heavily on a protected group.' " (quoting *Racine United Sch. Dist. v. Labor and Indus. Review Comm'n,* 164 Wis.2d 567, 476 N.W.2d 707, 718 (Wis.App.1991))). Consequently, " 'a complainant asserting a *disparate treatment* theory *must prove discriminatory intent* to prevail, while a complainant asserting a *disparate impact* theory *need not offer any such proof.*' " *Morris Mem'l,* 189 W.Va. at 317, 431 S.E.2d at 356 (quoting *Racine,* 476 N.W.2d at 718) (emphasis added).

In the instant proceeding, the plaintiffs alleged that the use of a facially neutral

layoff policy by the defendant had an adverse impact on age protected employees. The plaintiffs also contended that the defendant had previously used a layoff policy that did not adversely affect age protected employees. The plaintiffs are relying upon statistical data to show the impact of the complained of layoff policy, as well as the layoff policies that were used in the past. These facts strongly support a disparate impact theory. We have recognized that "[d]isparate impact in an employment discrimination case is ordinarily proved by statistics[.]" Syl. pt. 7, *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995).

Although I believe the plaintiffs' case strongly supports the disparate impact theory, on remand the plaintiffs are not precluded from having the jury instructed on both the disparate impact model and the disparate treatment model. *See Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995) (holding that plaintiff's evidence showed disparate treatment, but not disparate impact).

In view of the foregoing, I concur. I am authorized to state that Justice Maynard joins me in this concurring opinion.